STATE of Wisconsin EX REL. Gerald J. SHROBLE, Plaintiff-Appellant,

v.

Norman PRUSENER, Defendant-Respondent-Petitioner,

CITY OF WHITEWATER and County of Walworth, Defendants-Respondents.

Supreme Court

*No. 92–3288. Oral argument April 27, 1994.—Decided June 22, 1994.*

(Also reported in 517 N.W.2d 169.)

For defendant-respondent-petitioner there were briefs by *Charles H. Bohl, Pamela M. Schmidt, Laurie J. McLeRoy* and *Whyte Hirschboeck Dudek, S.C.,* Milwaukee and oral argument by *Laurie J. McLeRoy.*

For plaintiff-appellant there was a brief by *Russell W. Devitt, David P. Honan* and *Soffa & Devitt,* Whitewater and oral argument by *Russell W. Devitt.*

Amicus curiae brief was filed by *Alan Lee,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general for State of Wisconsin Elections Board.

WILLIAM A. BABLITCH, J.   Norman Prusener (Prusener) seeks review of a court of appeals' decision holding that an action in quo warranto is available to challenge the results of an election based on alleged mistakes in the canvassing process. Prusener argues that the recount statute[1] provides the exclusive rem-

---

[1] Section 9.01, Stats., reads in relevant parts:

**Recount.** (1) Petition; Fees; General Procedures. (a) Any candidate voted for at any election or any elector who voted upon any referendum question at any election may request a recount. The petitioner shall file a verified petition or petitions accompanied by the fee . . . not earlier than the time of completion of the canvass and not later than 5 p.m. on the 3rd business day following the last meeting day of the municipal or county board of canvassers determining the election for that office or on that referendum question or, if more than one board of canvassers makes the determination not later than 5 p.m. on the 3rd business day following the last meeting day of the last board of canvassers which makes a determi-

edy by which to challenge a mistake in the canvassing process. Because Prusener's opponent in the election, Gerald J. Shroble (Shroble), did not request a recount within the statutory time limit, Prusener argues that he is precluded from challenging Prusener's title to office. We agree with Prusener. We hold that the recount statute plainly and unambiguously provides the exclusive remedy for challenging the results of an election based on mistakes in the canvassing process. Because Shroble did not request a recount within the time limit under the statute, his remedy has expired.[2] We also hold that the recount statute, as the exclusive remedy, does not violate Shroble's constitutional due process and equal protection rights and does not uncon-

---

nation. . . . Each verified petition shall state that at the election the petitioner was a candidate for the office in question . . . that the petitioner is informed and believes that a mistake or fraud has been committed in a specified ward or municipality in the counting and return of the votes cast for the office . . . or shall specify any other defect, irregularity or illegality in the conduct of the election. . . . The petition may be amended to include information discovered as a result of the investigation of the board of canvassers after the filing of the petition, if the petitioner moves to amend the petition as soon as possible after the petitioner discovered or reasonably should have discovered the information which is the subject of the amendment and the petitioner was unable to include information in the original petition. . . .

(11) Exclusive Remedy. This section constitutes the exclusive judicial remedy for testing the right to hold an elective office as the result of an alleged irregularity, defect or mistake committed during the voting or canvassing process.

[2] Prusener informed this court at oral argument that he only held office until April, 1994. Since that time another election has been held, and Shroble has succeeded Prusener in the office of Walworth County Supervisor. Therefore, Shroble maintains this action for damages incurred by him as a result of Prusener holding office, and for costs and attorney's fees.

stitutionally deny the electorate the right to have the winning candidate hold office. Accordingly, we reverse.

■ This action stems from a motion to dismiss Shroble's complaint. We therefore assume the facts alleged in the complaint to be true. *Koback v. Crook,* 123 Wis. 2d 259, 263, 366 N.W.2d 857 (1985). Prusener and Shroble ran against each other for the office of Walworth County Supervisor. After the election on April 7, 1992, the election officials of the city of Whitewater and the County of Walworth determined that Prusener defeated Shroble by a margin of 24 votes.

On April 23, 1992, some 16 days later, representatives of the city of Whitewater advised Shroble that mistakes were made in tabulating the election results and that in fact, Shroble had won the election by a margin of 19 votes. Although the statutory three-day time limit for requesting an official recount under sec. 9.01, Stats., had expired, Shroble filed a petition for recount on April 24, 1992.

On April 27, 1992, Shroble brought an action in the circuit court alleging that sec. 9.01, Stats., unconstitutionally violated his due process and equal protection rights in that it required him to request a recount before he was made aware of the canvassing error. Shroble asked the circuit court to declare sec. 9.01 unconstitutional and order a recount. If the recount proved that Shroble had received the greater number of votes, he asked that the circuit court exclude Prusener from office in favor of Shroble.

On July 17, 1992, Shroble filed an amended complaint in which he added an action in quo warranto under sec. 784.04, Stats.,[3] to test Prusener's ability to

---

[3] Section 784.04, Stats., codifies the common law quo warranto action and provides in relevant part:

hold office. He asked that the court find Prusener had "usurped" the office of Walworth County Supervisor by taking office without receiving a majority of votes. Further, Shroble asked that the court declare him the lawful Supervisor and award him damages and costs for the time that Prusener illegally held office.

On September 24, 1992, the circuit court granted the defendants' motion to dismiss Shroble's action on the basis that sec. 9.01(11), Stats., provides the exclusive remedy for challenging mistakes in the canvassing process. Because Shroble did not ask for a recount within the statutory three-day time limit, the circuit court determined that his remedy had expired.

Shroble appealed, and the court of appeals reversed holding that an action in quo warranto remained a viable remedy to challenge the results of an election despite the exclusivity language in sec. 9.01(11), Stats. *State ex rel. Shroble v. Prusener,* 177 Wis. 2d 656, 503 N.W.2d 301 (Ct. App. 1993).

We address two issues in this case. First, is sec. 9.01, Stats., the exclusive remedy to challenge the results of an election based upon mistakes in the canvassing process? Second, if sec. 9.01 is the exclusive remedy, does it unconstitutionally violate Shroble's due process and equal protection rights and unconstitutionally deny the electorate its right to have the winning candidate to hold office?

---

**When an action may be brought.** (1) An action may be brought by the attorney general in the name of the state, upon his or her own information or upon the complaint of any private party, against the parties offending in the following cases:

(a) When any person shall usurp, intrude into or unlawfully hold or exercise any public office, civil or military, or any franchise within this state, or any office in a corporation created by the authority of this state . . ..

109

We begin by determining whether sec. 9.01, Stats., provides the exclusive remedy to challenge the result of the Walworth County election. This requires us to interpret sec. 9.01(11). The interpretation of a statute is a question of law which we review *de novo*. *Revenue Dept. v. Milwaukee Brewers*, 111 Wis. 2d 571, 577, 331 N.W.2d 383 (1983). In construing the statute our objective is to discern the legislative intent. *State v. Eichman*, 155 Wis. 2d 552, 560, 455 N.W.2d 143 (1990). The primary source to be used in determining that intent is the language of the statute. *Id.* Section 9.01(11) provides:

> **(11)** EXCLUSIVE REMEDY. This section constitutes the exclusive judicial remedy for testing the right to hold an elective office as the result of an alleged irregularity, defect or mistake committed during the voting or canvassing process.

Section 9.01(11) is unambiguous in its directive to make sec. 9.01 the exclusive remedy for testing the right to hold office based on mistakes made during the canvassing process. It follows therefore, that if a candidate does not petition for a recount to challenge a mistake in the canvassing process within the three-day time limit provided for in sec. 9.01, that candidate is precluded from challenging the canvassing mistake. The statute on its face is capable of no other interpretation.

Shroble argues and the court of appeals agreed that despite the unambiguous exclusivity language in sec. 9.01(11), Stats., an action in quo warranto is available to challenge the results of the Walworth County election. Shroble argues that whereas sec. 9.01 pro-

110

vided the remedy to challenge the conduct *during* the canvassing process, quo warranto provides the remedy to challenge the mistaken election *result* (even if the challenge is based on a canvassing mistake). The cases relied on by Shroble to illustrate the difference between an action in quo warranto and an action under the recount statute, however, are unpersuasive. They were decided prior to 1983 under the earlier recount statute which specifically allowed a candidate to pursue other remedies, and before the statute was amended to include the exclusivity provision in sec. 9.01(11). The statutory changes that occurred in 1983 support our interpretation of the statute.

Prior to 1983, sec. 9.01(8) stated:

> **(8)** Nothing in this section shall be construed to abrogate any right or remedy that any candidate may now have affecting the trying of title to office.

The legislature in 1983 Wis. Act 183 repealed section (8) and created sec. 9.01(11), the exclusivity provision. The analysis by the Legislative Reference Bureau (LRB) in the engrossed Act, 1983 Assembly Bill 694, states:

> The bill makes the recount appeal procedure the exclusive judicial remedy for testing the right to hold an elective office as the result of an alleged irregularity, defect or mistake committed during the voting or canvassing process. *Current law does not preclude resort to other remedies; for example, the common law writ of quo warranto.* (Emphasis added.)

An official statement from a legislative source is valid evidence of legislative intent. *Ball v. District No. 4, Area Board,* 117 Wis. 2d 529, 543, 345 N.W.2d 389 (1984). The LRB's statement indicates that the intent

111

of the amendment was to preclude actions in quo warranto and to make sec. 9.01 the exclusive remedy for challenging mistakes in the canvassing process. Thus, the cases relied on by Shroble are no longer authority for his argument.

In the alternative, Shroble contends that we should construe the time limit in sec. 9.01, Stats., as directory rather than mandatory, and find that his filing of the petition within three days after learning of the mistake was sufficient under the statute. When the legislature explicitly provides that the statute must be complied with in order for the statutory provision to take effect, the statute should be construed as mandatory. *Petition of Anderson,* 12 Wis. 2d 530, 534, 107 N.W.2d 496 (1961); *Lanser v. Koconis,* 62 Wis. 2d 86, 91, 214 N.W.2d 425 (1974). Section 9.01(1), states that a "candidate voted for at any election . . . may request a recount." If a candidate desires a recount sec. 9.01(1) states that the candidate "shall file a verified petition . . . not later than 5 p.m. on the 3rd business day . . ." following the final election determination. Section 9.01(1) explicitly requires that in order for the board of canvassers to perform a recount, a candidate must file a petition within three days after the final election determination. This time limit is mandatory. It is not enough, given the explicitness of the statute, that Shroble filed a petition for recount within three days after learning of the canvassing mistake. He filed more than three days after the board met to determine the final election results, contrary to the statute.

Based upon the above, we hold that sec. 9.01, Stats., plainly and unambiguously provides the exclusive remedy for Shroble to challenge the alleged

canvassing error. Because he did not request a recount under sec. 9.01 within the three-day time limit, he is precluded from maintaining this action. Accordingly, we reverse the decision of the court of appeals.

This conclusion does not end our inquiry. Shroble contends that if sec. 9.01, Stats., is the exclusive remedy it violates his due process and equal protection rights and unconstitutionally denies the electorate the right to have the winning candidate hold office. Constitutional challenges to a statute must overcome a presumption of constitutionality. *State ex rel. Hammermill Paper Co. v. La Plante,* 58 Wis. 2d 32, 45–46, 205 N.W.2d 784 (1973). The burden on the challenging party is onerous:

> It is not enough that respondent establish doubt as to the act's constitutionality nor is it sufficient that respondent establish the unconstitutionality of the act as a probability. Unconstitutionality of the act must be demonstrated beyond a reasonable doubt. Every presumption must be indulged to sustain the law if at all possible and, wherever doubt exists as to a legislative enactment's constitutionality, it must be resolved in favor of constitutionality. *Id.* at 46.

Shroble seems to be contending that the statute's three-day time limit is arbitrary and unfairly discriminates against candidates who are unaware that a mistake has been made in the canvassing process until after the three-day limit has expired. Shroble cites no authority to support his argument that such a time limit is arbitrary or without rational basis, as is required for due process and equal protection chal-

lenges, respectively. The need for finality in elections and continuity of governance is not arbitrary, but is a rational basis for the legislature to set such a time limit. Therefore, we hold that sec. 9.01, Stats., as the exclusive remedy for challenging a mistake in the canvassing process, does not violate Shroble's constitutional rights to due process and equal protection.

The final issue for determination is whether sec. 9.01, Stats., violates the electorate's right to have the winning candidate hold office. Shroble's argument that the statute, as the exclusive remedy, is unconstitutional is premised upon the basis that the electorate has a constitutional right to vote and consequently to expect the winning candidate to hold office. If the candidate actually voted into office is precluded from office, the electorate is without process to challenge the result (sec. 9.01 does not allow members of the electorate to request a recount), and thus the electorate's right to vote is meaningless.

Shroble relies on our decision in *Burke v. Madison,* 17 Wis. 2d 623, 117 N.W.2d 580 (1962). In *Burke,* a town and citizen brought an action to have an annexation ordinance, which was adopted after a referendum, declared invalid. *Id.* at 625–26. One of the issues addressed in *Burke* was whether sec. 6.66, Stats., (predecessor to sec. 9.01) was the exclusive remedy for challenging a referendum election. *Id.* at 627. The court concluded that the statute was the exclusive remedy to the exclusion of other actions such as quo warranto, engaging in a lengthy discussion of the availability of quo warranto to test title of a person who has usurped office.

The *Burke* court also stated that "a grave question of constitutionality would arise if the legislature were

to make the election-contest procedure in sec. 6.66 the exclusive remedy in a situation involving alleged *usurpation* of office, because sec. 6.66 permits only candidates and electors, and not the people in their sovereign capacity, to contest an election." *Id.* at 633–34. (Emphasis added.) From this statement, Shroble contends that our conclusion that sec. 9.01, Stats., is the exclusive remedy renders sec. 9.01 unconstitutional. It does not.

The *Burke* court's reference was to constitutional violations that might occur in the event voters are deprived of the opportunity to challenge title of a person who had *usurped* an office. Our decision in this case does not affect the availability of quo warranto to remedy a usurpation of office. Our decision today simply precludes quo warranto as a remedy in cases involving mistakes in the canvassing process. Prusener did not unlawfully usurp the office of Supervisor. Any challenge to his title based on a canvassing error was proper only under the recount statute.

Further, even if sec. 9.01, Stats., infringes upon the electorate's right to have the winning candidate hold office, we find compelling reasons to support such a statute. While we have recognized that "the right of the citizen to vote in elections for public officers is inherent . . ." *State ex rel. Frederick v. Zimmerman,* 254 Wis. 600, 613, 37 N.W.2d 473 (1949), we have also stated that "it is a right . . . subject to reasonable regulation by the legislature." *Id.* The need for finality in the election process requires that the time and method of challenging election results be limited and at some point come to an end. This statute reasonably limits the remedy of recount to the candidates in the election. These candidates are intimately involved in the election process and their interests are directly affected by

the result. Appropriately, the legislature relies on them to represent the interests of the electorate.

We are cognizant that in extraordinary situations such as this, a candidate may be deprived of his or her election. However, we have stated that " '[a]n election honestly conducted under the forms of law ought generally to stand, notwithstanding individual electors may have been deprived of their votes . . ..' " *State ex rel. Wold,* 87 Wis. at 179. Our system of democracy depends on continuity of governance and the ability of the candidate to serve without the constant fear of being replaced months or years later because of a canvassing error. Therefore, we hold that the statute, as the exclusive remedy, does not violate the electorate's constitutional right to have the winning candidate hold office.

*By the Court.*—The decision of the court of appeals is reversed.